1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

SONJA LYNN VINCENT,                          No.  2:15-cv-0910-KJN

12

Plaintiff,

13

v.                                                        ORDER

14

COMMISSIONER OF SOCIAL
SECURITY,

15

16

Defendant.

17

18          Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

19    ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and

20    Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social

21    Security Act ("Act").[1]  Plaintiff filed a motion for summary judgment, which the Commissioner

22    opposed while simultaneously filing a cross-motion for summary judgment.  (ECF Nos. 17, 22,

23    23.)  No optional reply brief was filed by plaintiff.

24          For the reasons discussed below, the court DENIES plaintiff's motion for summary

25    judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS

26

27    _____

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both
parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.

28    (ECF Nos. 7, 9.)

1

1    the Commissioner's final decision.

2    I.      BACKGROUND

3          Plaintiff was born on September 9, 1969; she has a high school education; her previous

4    occupations include cook, assistant manager of a burger restaurant, caregiver, and cashier; and

5    she last worked in December 2010 as a cashier.[2]  (Administrative Transcript ("AT") 44-46.)

6    Plaintiff applied for DIB and SSI benefits on April 18, 2011, alleging that her disability began on

7    December 16, 2010, and that she was disabled due to bipolar disorder and chronic back pain.[3]

8    (AT 102-03, 217-29, 234.)  After plaintiff's applications were denied initially and on

9    reconsideration, she requested a hearing before an administrative law judge ("ALJ"), which took

10   place on April 3, 2013.  (AT 147-52, 155-71, 172-76.)  In a decision dated June 17, 2013, the ALJ

11   found plaintiff not disabled.  (AT 20-38.)  The ALJ's decision became the final decision of the

12   Commissioner when the Appeals Council denied plaintiff's request for review on November 25,

13   2014.  (AT 5-9.)  The Appeals Council subsequently granted plaintiff an extension of time to seek

14   judicial review of the Commissioner's decision.  (AT 1-3.)  Thereafter, plaintiff filed this action

15   in federal district court on April 27, 2015, to obtain judicial review of the Commissioner's final

16   decision.  (ECF No. 1.)

17   II.     ISSUES PRESENTED

18         Plaintiff raises the following issues:  (1) whether the ALJ improperly evaluated the

19   opinions of the treating physicians; (2) whether the ALJ erroneously failed to consider plaintiff's

20   assessed mental limitations; and (3) whether the ALJ improperly failed to credit plaintiff's and

21
22   [2] Because the parties are familiar with the factual background of this case, including plaintiff's
     medical and mental health history, the court does not exhaustively relate those facts in this order.
     The facts related to plaintiff's impairments and treatment will be addressed insofar as they are
23   relevant to the issues presented by the parties' respective motions.

24   [3] Plaintiff filed both DIB and SSI applications, but the ALJ's decision did not reference the DIB
     application.  (AT 23.)  Neither party asserts prejudicial error, and the court likewise finds none.
25   The standard for disability is essentially the same for purposes of DIB and SSI claims.
     Furthermore, to be eligible for DIB, plaintiff had to prove disability prior to June 30, 2015, the
26   date she was last insured.  (AT 213.)  Because the ALJ considered evidence from the entire period
     from plaintiff's alleged onset date of December 16, 2010, through June 17, 2013, the date of the
27   ALJ's decision, and found plaintiff not disabled, the omission in itself was harmless and does not
     warrant remand.
28

2

1    third parties' testimony regarding the nature and impact of plaintiff's functional limitations.

2    III.    LEGAL STANDARD

3          The court reviews the Commissioner's decision to determine whether (1) it is based on

4    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

5    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

6    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

7    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

8    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

9    Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

10   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

11   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

12   court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

13   interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

14   IV.    DISCUSSION

15          A.    Summary of the ALJ's Findings

16          The ALJ evaluated plaintiff's entitlement to disability benefits pursuant to the

17   Commissioner's standard five-step analytical framework. [4]   At the first step, the ALJ concluded

18   _____

19          [4] Disability Insurance Benefits are paid to disabled persons who have contributed to the
     Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to
20   disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability,
     in part, as an "inability to engage in any substantial gainful activity" due to "a medically
21   determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
     A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
22   See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
     137, 140-42 (1987).  The following summarizes the sequential evaluation:

23                  Step one:  Is the claimant engaging in substantial gainful
               activity?  If so, the claimant is found not disabled.  If not, proceed
24             to step two.
                    Step two:  Does the claimant have a "severe" impairment?
25             If so, proceed to step three.  If not, then a finding of not disabled is
               appropriate.
26                  Step three:  Does the claimant's impairment or combination
               of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
27             404, Subpt. P, App.1?  If so, the claimant is automatically
               determined disabled.  If not, proceed to step four.
28                  Step four:  Is the claimant capable of performing his past

that plaintiff had not engaged in substantial gainful activity since April 18, 2011, the SSI

application date.  (AT 25.)  At step two, the ALJ determined that plaintiff had the following

severe impairments:  degenerative disc disease of the lumbar spine, bipolar disorder, and

posttraumatic stress disorder. (Id.)  However, at step three, the ALJ determined that plaintiff did

not have an impairment or combination of impairments that meets or medically equals an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 26.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally lift/carry, push/pull 20 pounds and 10 pounds frequently; she could stand/walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday, with normal breaks. She can perform unskilled, simple repetitive tasks.

(AT 27.)  At step four, the ALJ found that plaintiff was capable of performing past relevant work.

(AT 31.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined

in the Act, since April 18, 2011, the date the SSI application was filed.  (AT 32.)

B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

(1) Whether the ALJ improperly evaluated the opinions of the treating physicians

The weight given to medical opinions depends in part on whether they are proffered by

treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,

1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking,

---

work? If so, the claimant is not disabled.  If not, proceed to step five.
        Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1  a treating physician's opinion carries more weight than an examining physician's opinion, and an

2  examining physician's opinion carries more weight than a non-examining physician's opinion.

3  Holohan, 246 F.3d at 1202.

4         To evaluate whether an ALJ property rejected a medical opinion, in addition to

5  considering its source, the court considers whether (1) contradictory opinions are in the record;

6  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

7  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

8  F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be

9  rejected for "specific and legitimate" reasons.  Id. at 830.  While a treating professional's opinion

10  generally is accorded superior weight, if it is contradicted by a supported examining

11  professional's opinion (supported by different independent clinical findings), the ALJ may

12  resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes

13  v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the

14  contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any

15  event need not give it any weight if it is conclusory and supported by minimal clinical findings.

16  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally

17  supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-

18  examining professional, by itself, is insufficient to reject the opinion of a treating or examining

19  professional.  Lester, 81 F.3d at 831.

20         **a.  Dr. Birtha Balcazar, M.D.**

21         In March 2013, treating physician Dr. Balcazar completed a physical evaluation form

22  assessing plaintiff's ability to do work-related activities, which included the following limitations:

23  plaintiff could lift/carry up to 10 pounds occasionally and under 10 pounds frequently; could

24  stand/walk for 3 hours during an 8-hour day with normal breaks; could sit for 3 hours during an

25  8-hour day with normal breaks; could sit for 20 minutes and stand for 10-15 minutes before

26

27  [5] The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3)
nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;

28  and (6) specialization.  20 C.F.R. § 404.1527.

1    changing position; had to walk around for 5-10 minutes every 60 minutes; needed the opportunity

2    to shift at will between sitting and standing/walking; and needed to lie down about twice a day

3    during a work shift.  (AT 575-76.)  Dr. Balcazar opined that plaintiff could occasionally twist and

4    climb stairs, but could never stoop, bend, crouch, or climb ladders.  (AT 576-77.)  Additionally,

5    plaintiff could push or pull only up to 10 pounds and would have difficulty balancing.  (AT 577.)

6    Dr. Balcazar then opined that plaintiff should avoid concentrated exposure to extreme heat and

7    cold, wetness, humidity, noise and fumes, odors, dusts, gases, and poor ventilation, and should

8    avoid moderate exposure to hazards including machinery and heights.  (Id.)  Overall, Dr. Balcazar

9    opined that plaintiff could not work 8 hours per day, 5 days a week with legally allowed rest

10   periods and lunch breaks at the normal pace for plaintiff's type of work, and that plaintiff's

11   impairments would cause her to be absent from work more than three times a month.  (AT 578.)

12          For the reasons outlined below, the court finds that the ALJ properly discounted Dr.

13   Balcazar's opinion.

14          First, the ALJ noted inconsistencies between Dr. Balcazar's assessment and the medical

15   evidence.  (AT 30.)  Indeed, Dr. Balcazar's severe opinion conflicted with her own relatively

16   minimal clinical findings.  At plaintiff's first medical examination with Dr. Balcazar in

17   September 2012, the physician observed that plaintiff was alert with no acute distress, had partial

18   amputation of the right big toe and full amputation of the right second toe, had calluses on the

19   right foot, and was stepping more on the lateral side of the right foot to compensate for missing

20   toes.  (AT 561.)  At her second visit with Dr. Balcazar in November 2012, Dr. Balcazar again

21   noted plaintiff to be alert with no acute distress, and added that plaintiff had a somewhat antalgic

22   gait due to back pain and was somewhat stiff.  (AT 542-43.)  Two months later, in January 2013,

23   Dr. Balcazar once again noted that plaintiff was alert with no acute distress, and added that she

24   appeared ambulatory and had only mild paralumbar tenderness on palpation.  (AT 539-40.)

25          Second, the ALJ also noted that plaintiff's activities of daily living were inconsistent with

26   Dr. Balcazar's assessment:

27               She is able to care for her personal needs.  She prepares simple
                 meals, does household chores, and scrubs the shower, vacuums,
28               does laundry, and shops for clothing and food.  She goes out every

6

day by walking.  She walks 20-40 minutes a day.  She also takes public transportation.  She goes to the park with her friends.  She went camping and was able to sleep in a sleeping bag.  The claimant also stated she was traveling to Washington for Thanksgiving to see her daughter.

(AT 29-30, 251-56.)

Third, Dr. Balcazar's opinion was inconsistent with plaintiff's own testimony that she would likely still be working were it not for the alleged harassment she had endured from her manager at her prior job.  (AT 30, 48.)

Finally, Dr. Balcazar's opinion is inconsistent with the opinion of consultative examining physician Dr. John Chang, M.D.  Dr. Chang completed an orthopedic consultation on November 4, 2011, where he noted the following:  plaintiff was in no acute or chronic distress; was able to move about the office freely without assistance; was able to get on and off the examination table as needed; could assume a supine position without any assistance or difficulty and was in apparent comfort throughout the evaluation; had normal posture and gait; had no discernable limitation in any plane of the cervical spine; had forward flexion of 70 degrees along lower lumbar region of the lower back, but otherwise was within normal limits; had tightness in the right hamstring and right heel cord; had no evidence of swelling, effusion, or deformity of any joint; and had normal muscle strength, sensation, and reflexes.  (AT 378-79.)

Based on his examination, Dr. Chang opined that plaintiff had the following functional limitations:  she could push, pull, lift, and carry 50 pounds occasionally and 25 pounds frequently; she could stand up to 6 hours per day; she did not require an assistive device for ambulation; she could frequently bend, kneel, stoop, crawl, crouch, walk on uneven terrain, climb ladders, and work at heights; and she could sit without restriction.  (AT 379.)  Because Dr. Chang personally examined plaintiff and made independent clinical findings, his opinion constitutes substantial evidence on which the ALJ was entitled to rely.

In light of the above, the ALJ properly discounted Dr. Balcazar's opinion.

**b.  Dr. Herbert Monie, M.D.**

On May 20, 2011, Dr. Monie completed a medical source assessment of functional capacity on plaintiff's behalf.  (AT 339-41.)  He opined the following physical limitations:

1   plaintiff could lift/carry less than 10 pounds occasionally and frequently; could stand and/or walk

2   for less than 2 hours total during an 8-hour day; could sit for less than 6 hours total in an 8-hour

3   day; was restricted on a frequent basis from climbing, stooping, crouching, kneeling, and

4   crawling; could push 20 pounds frequently and 30 pounds occasionally, but could only pull 20

5   pounds occasionally.  (AT 340-41.)  He recommended that plaintiff avoid concentrated exposure

6   to extreme heat, wetness, and humidity; avoid moderate exposure to extreme cold, dusts, poor

7   ventilation, noise, and vibrations; and avoid all exposure to hazards including machinery and

8   heights.  (AT 341.)  He opined that these limitations would persist for many years, likely for

9   plaintiff's entire lifetime.  (Id.)

10      For the reasons outlined below, the court finds that the ALJ reasonably discounted treating

11   physician Dr. Monie's opinion as to physical limitations.

12      First, much of Dr. Monie's opinion relied heavily on plaintiff's subjective reports and was

13   not supported by any significant objective findings.  (AT 31.)  To support his May 2011 physical

14   assessment, Dr. Monie referenced plaintiff's amputated toes, recent hernia surgery, and lower

15   back pain.  (AT 340.)  The ALJ found that those were "too few objective results" to support the

16   severity of the limitations, and, given the lack of any further explanation or rationale, correctly

17   accorded the opinion little weight.

18      Second, Dr. Monie's severe opinion was inconsistent with his own treatment records

19   documenting mostly mild clinical findings.  (AT 31.)  At the first examination on March 11,

20   2011, Dr. Monie noted plaintiff was alert and in no acute distress, was able to walk up and down

21   stairs, was sitting up with no discomfort, and had normal gait and balance.  (AT 327.)  At

22   plaintiff's follow-up appointment on March 25, 2011, Dr. Monie noted plaintiff appeared well-

23   nourished, well-developed and in no apparent distress.  (AT 322-23.)  Once again, on April 1,

24   2011, Dr. Monie noted that plaintiff was alert in no acute distress, had normal gait and balance,

25   and a labile mood with a normal affect.  (AT 320.)  On two more occasions, April 11, 2011, and

26   April 22, 2011, Dr. Monie noted that plaintiff was alert, was in no acute distress, had normal gait

27   and balance, and had a normal affect.  (AT 314, 317.)  Curiously, despite these mild findings and

28   the fact that Dr. Monie had only treated plaintiff for about two months, he nonetheless opined that

1    plaintiff's assessed limitations began 3½ years prior and would probably persist for plaintiff's

2    entire lifetime.  (AT 341.)

3          Third, Dr. Monie's opinion is inconsistent with the opinion of examining physician Dr.

4    Chang, as discussed above, which is well-supported by Dr. Chang's own clinical findings and

5    accompanying medical rationale.

6          As such, the ALJ properly discounted Dr. Monie's opinion concerning plaintiff's physical

7    limitations.

8          On May 20, 2011, Dr. Monie also completed a short-form evaluation for mental disorders

9    and diagnosed plaintiff with affective psychosis and PTSD.  (AT 342-45.)  He assessed the

10   following mental status: well-groomed; normal motor activity; normal speech; cooperative; very

11   verbal when upset, but directable and not out of control; orientated in all spheres; intact

12   concentration; normal memory; below average education because of concentration problems;

13   anxious, depressed and angry mood with labile affect; and dislike of riding in cars, sneezing,

14   coughing or touching money due to germ phobia.  (AT 343-45.)  Dr. Monie opined that plaintiff

15   had a good ability to perform activities within a schedule and maintain regular attendance; had a

16   fair ability to understand, remember and carry out simple and complex instructions; and had a

17   poor ability to maintain concentration, complete a normal workday/workweek without

18   interruptions, and respond appropriately to changes in a work setting.  (AT 345.)

19         For the reasons outlined below, the court finds that the ALJ properly gave Dr. Monie's

20   mental opinion little weight.

21         First, Dr. Monie's severe findings are not supported by the limited treatment history.

22   Notably, on the same date that Dr. Monie completed the evaluation form assessing disabling

23   mental limitations, his treatment notes merely indicate that plaintiff was alert, oriented, and in no

24   acute distress, with a normal affect and a stable mood.  (AT 402.)  Moreover, his treatment notes

25   from over the approximately 2 months of treatment likewise document largely mild mental

26   clinical findings. (AT 314, 317, 322-23, 327.)

27         Second, Dr. Monie's opinion is inconsistent with the opinion of consultative examining

28   psychologist Dr. Miles White.  Dr. White completed a comprehensive psychological evaluation

9

on November 22, 2011, where he noted the following:  plaintiff was coherent and organized; her thought content was linear, focused, and non-delusional; her mood was calm, though generally dysthymic and anxious, and her affect was stable; her speech was normal; she was fully oriented; and her ability to communicate and process in the abstract was unimpaired.  (AT 433-34.)  Overall, Dr. White found that plaintiff's insight was mildly impaired because she tended to exaggerate and overestimate the degree of severity of her psychological symptoms.  (AT 435.)  Dr. White opined that plaintiff had no impairments in her ability to understand, remember, and carry out simple one or two-step job instructions; mild impairments in her ability to relate and interact with co-workers and the public, accept instructions from supervisors, and perform work activities without special or additional supervision; and moderate impairments in her ability to perform detailed and complex instructions, maintain concentration/attention/persistence/pace, associate with day-to-day work activity including attendance and safety, and maintain regular attendance in the workplace and perform work activities on a consistent basis.  (AT 436.)  Dr. White, a mental health specialist, personally examined plaintiff and made independent clinical findings, and his opinion thus constitutes substantial evidence on which the ALJ was entitled to rely.

In light of the above, the ALJ properly discounted Dr. Monie's opinion concerning plaintiff's mental limitations.

### c.  Dr. Okechukwu Nwangburuka, M.D.

Plaintiff also submitted to the Appeals Council a mental capacity opinion by a Dr. Nwangburuka, dated September 13, 2013, which assessed various serious and disabling mental limitations.  (AT 39-40.)  The Appeals Council ostensibly refused to consider this new evidence because it post-dated the ALJ's June 17, 2013 decision, and did not relate to the relevant period under review.  (AT 6.)

Generally speaking, "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  Brewes v. Comm'r of Soc. Sec., 682 F.3d 1157, 1163 (9th Cir. 2012).

1    Here, the court has considered Dr. Nwangburuka's opinion along with the record as a whole, but

2    ultimately concludes that no prejudicial error occurred.

3          As an initial matter, the court cannot find that the Appeals Council erred in determining

4    that Dr. Nwangburuka's opinion did not relate to the relevant period under review.  To be sure,

5    the mere fact that the opinion post-dates the ALJ's decision is not dispositive.  For example, an

6    opinion by a physician who treated a claimant over an extended period of time, including during

7    the relevant period, may well relate to the relevant period even if the opinion itself post-dates the

8    ALJ's decision.  However, in this case, there is no indication in Dr. Nwangburuka's opinion that

9    he treated plaintiff during the relevant period.  The opinion itself is merely dated September 13,

10   2013, and does not purport to assess plaintiff's mental health retroactively.  (AT 39-40.)

11         Moreover, even assuming, without deciding, that Dr. Nwangburuka's opinion could be

12   said to relate to the relevant period, it is entirely conclusory and minimally supported.  Dr.

13   Nwangburuka does not cite a single objective clinical finding in support of his opinion, and all

14   portions of the form that invite explanation were left blank.  As such, the court finds it

15   implausible that the Appeals Council or the ALJ would have rendered a different decision had

16   they considered the substance of Dr. Nwangburuka's opinion.

17         Consequently, the Appeals Council's failure to consider Dr. Nwangburuka's opinion does

18   not warrant remand.

19         (2) Whether the ALJ erroneously failed to consider plaintiff's assessed mental limitations

20         As noted above, consultative examiner Dr. White opined that plaintiff had no impairments

21   in her ability to understand, remember, and carry out simple one or two-step job instructions; mild

22   impairments in her ability to relate and interact with co-workers and the public, accept

23   instructions from supervisors, and perform work activities without special or additional

24   supervision; and moderate impairments in her ability to perform detailed and complex

25   instructions, maintain concentration/attention/persistence/pace, associate with day-to-day work

26   activity including attendance and safety, and maintain regular attendance in the workplace and

27   perform work activities on a consistent basis.  (AT 436.)  Non-examining state agency

28   psychologist, Dr. Hillary Weiss, likewise assessed certain moderate mental limitations.  (AT 138-

39.)  On appeal, plaintiff argues that the ALJ's RFC fails to account for those assessed mental

limitations.  That argument lacks merit.

  The Ninth Circuit has observed that an ALJ may synthesize and translate assessed

limitations into an RFC assessment without repeating each functional limitation verbatim in the

RFC assessment.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008); see also

20 C.F.R. § 404.1545 (defining RFC as "the most you can still do despite your limitations").  In

this case, plaintiff's assessed RFC appears to adequately capture the assessed moderate mental

limitations.  Notably, a position involving unskilled, simple, repetitive tasks would logically

require less concentration and implicate less difficulties with persistence and pace, which may in

turn have impacted attendance and performance of work on a consistent basis, thereby addressing

plaintiff's moderate limitations in those areas.  See Stubbs-Danielson, 539 F.3d at 1174 (holding

that an ALJ's assessment of a claimant adequately captures restrictions related to concentration,

persistence, or pace where the assessment is consistent with restrictions identified in the medical

testimony).

  Moreover, the ALJ's failure to specifically include the above limitations was harmless,

because the Ninth Circuit has already held that moderate mental limitations do not even require

vocational expert testimony.  Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007).  In Hoopai,

a medical source determined that the claimant was moderately limited in "his ability to maintain

attention and concentration for extended periods; his ability to perform activities within a

schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability

to complete a normal workday and workweek without interruption from psychologically-based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods."  Id.  After the ALJ utilized the Grids at step five to determine that the claimant was not

disabled, plaintiff contended on appeal that the ALJ was required to seek vocational expert

testimony regarding the limitations assessed.  Id. at 1075.  The Ninth Circuit rejected this

argument, holding that those moderate limitations were not sufficiently severe to prohibit the ALJ

from relying on the Grids without the assistance of a vocational expert.  Id. at 1077.

  Therefore, plaintiff's mental limitations were properly considered.

12

1        (3) Whether the ALJ improperly failed to credit plaintiff's and third parties' testimony

2   regarding the nature and impact of plaintiff's functional limitations

3        In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of

4   Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

5           To determine whether a claimant's testimony regarding subjective
            pain or symptoms is credible, an ALJ must engage in a two-step
6           analysis.  First, the ALJ must determine whether the claimant has
            presented objective medical evidence of an underlying impairment
7           which could reasonably be expected to produce the pain or other
            symptoms alleged.  The claimant, however, need not show that her
8           impairment could reasonably be expected to cause the severity of
            the symptom she has alleged; she need only show that it could
9           reasonably have caused some degree of the symptom.  Thus, the
            ALJ may not reject subjective symptom testimony . . . simply
10          because there is no showing that the impairment can reasonably
            produce the degree of symptom alleged.
11
            Second, if the claimant meets this first test, and there is no evidence
12          of malingering, the ALJ can reject the claimant's testimony about
            the severity of her symptoms only by offering specific, clear and
13          convincing reasons for doing so. . . .

14  Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the

15  ALJ is not required to believe every allegation of disabling pain, or else disability benefits would

16  be available for the asking...."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

17       "The ALJ must specifically identify what testimony is credible and what testimony

18  undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,

19  693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

20  1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the

21  "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

22  between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

23  testimony from physicians and third parties concerning the nature, severity, and effect of the

24  symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

25  2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

26  1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the

27  court "may not engage in second-guessing."  Id. at 959.

28  ////

13

1   To the extent that the ALJ discounted plaintiff's testimony regarding her symptoms and

2   functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing

3   so.

4   The ALJ permissibly found that plaintiff's testimony was inconsistent with the medical

5   evidence, as properly weighed.  Although lack of medical evidence cannot form the sole basis for

6   discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the

7   ALJ to consider.  Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005).

8   The ALJ also properly noted that plaintiff's treatment was generally routine and

9   conservative, with mostly routine checkups and no evidence of specialized care, such as

10  orthopedic care for plaintiff's amputated toes.  (AT 28.)  See Parra v. Astrue, 481 F.3d 742, 751

11  (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is

12  sufficient to discount a claimant's testimony regarding severity of an impairment").

13  Substantial evidence further supports the ALJ's finding that plaintiff's daily activities

14  were inconsistent with her allegations of disabling symptoms and limitations.  (AT 29-30, 251-

15  56.)  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the

16  ALJ may discredit a claimant's testimony when the claimant reports participation in everyday

17  activities indicating capacities that are transferable to a work setting....Even where those activities

18  suggest some difficulty functioning, they may be grounds for discrediting the claimant's

19  testimony to the extent that they contradict claims of a totally debilitating impairment."  Molina,

20  674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d

21  676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs,

22  cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of

23  her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th

24  Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in

25  the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit

26  the claimant's credibility).

27  Here, as discussed above, plaintiff was able to care for personal needs, make meals, do

28  household chores, scrub the shower, vacuum, do laundry, and grocery shop; she walked 20-40

1   minutes every day, took public transportation, and went to the park with friends; she camped and

2   was able to sleep in a sleeping bag; and she made plans to travel to Washington to visit her

3   daughter.  (AT 29-30, 251-56.)  To be sure, the record also contains some contrary evidence

4   suggesting that plaintiff's activities are more limited.   However, it is the function of the ALJ to

5   resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported

6   by substantial evidence.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming

7   ALJ's credibility determination even where the claimant's testimony was somewhat equivocal

8   about how regularly she was able to keep up with all of the activities and noting that the ALJ's

9   interpretation "may not be the only reasonable one").  As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence,
> would have found [the claimant's] allegations of disabling pain
> credible.  But, as we reiterate in nearly every case where we are
> called upon to review a denial of benefits, we are not triers of fact.
> Credibility determinations are the province of the ALJ...Where, as
> here, the ALJ has made specific findings justifying a decision to
> disbelieve an allegation of excess pain, and those findings are
> supported by substantial evidence in the record, our role is not to
> second-guess that decision.

15   Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

16        Finally, plaintiff's own testimony was also inconsistent with her allegations of disabling

17   symptoms.  Plaintiff testified that she quit her last job because of the way she was treated and,

18   had it not been for the alleged harassment from her boss, she would likely still be working.  (AT

19   46-48, 58.)

20        As such, the ALJ reasonably discounted plaintiff's credibility.

21        Additionally, the ALJ properly discounted third-party statements regarding plaintiff's

22   symptoms and limitations.  "[C]ompetent lay witness testimony cannot be disregarded without

23   comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons

24   that are germane to each witness."  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  Here,

25   the ALJ specifically discussed the statements by third parties, thereby indicating that he had

26   considered them in the disability evaluation process.  (AT 28, 30.)  Nevertheless, those statements

27   essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already provided

28   specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally

1  germane to the third-party testimony.  As such, any error in not explicitly re-stating, or

2  incorporating by reference, the reasons given for discounting plaintiff's testimony with respect to

3  these third parties was harmless and remand is not warranted.  See Molina, 674 F.3d at 1115-22.

4  V.    CONCLUSION

5         In sum, the ALJ's decision was free from prejudicial error and supported by substantial

6  evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

7         1.  Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.

8         2.  The Commissioner's cross-motion for summary judgment (ECF Nos. 22, 23) is

9  GRANTED.

10        3.  The Commissioner's final decision is AFFIRMED and judgment is entered for the

11 Commissioner.

12        4.  The Clerk of Court shall close this case.

13        IT IS SO ORDERED.

14 Dated:  June 27, 2016

15

16                                          KENDALL J. NEWMAN
                                            UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21

22

23

24

25

26

27

28